UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | Case No. 4:23-cr-13 |
| v. | ) | |
| | ) | Judge Curtis L. Collier |
| JOHNNY BARBOUR | ) | Magistrate Judge Christopher H. Steger |

**M E M O R A N D U M**

This matter is before the Court on the report and recommendation ("R&R") of Magistrate Judge Christopher Steger, recommending the Court grant Defendant Johnny Barbour's motion to suppress certain evidence against him. (Doc. 35.) The United States ("the Government") objected to the R&R. (Doc. 40.) Defendant responded (Doc. 43), and the Government replied (Doc. 44).

The Court has reviewed the transcripts of the hearings, the exhibits introduced at the hearings, and the briefs the parties filed before and after the R&R issued. The Court will **OVERRULE in part** and **SUSTAIN in part** the Government's objections to the R&R, and **ADOPT in part and REJECT in part** the R&R (Doc. 35). Defendant's motion to suppress (Doc. 13) will be **DENIED.**

I.     BACKGROUND

The R&R begins with a detailed summary of the procedural history and the testimony provided by the witnesses at the suppression hearing. (Doc. 35 at 1–3.) The parties do not object to this portion of the R&R, and the Court incorporates Section II of the R&R by reference. The following summary of the factual background is derived from the R&R and the evidence presented at the evidentiary hearing held on April 10, 2024.

A.     **Factual Background**

In late 2022, unbeknownst to the investigators involved, both the City of Tullahoma Police Department and Coffee County Sheriff's Department were investigating Defendant for drug-related offenses.  (Docs. 13-3 at 1–2; 14-2 at 1; 37 at 9, 53.)  On November 28, 2022, Coffee County Sheriff's Department Officers Blake Simmons and Kevin Martin conducted a controlled buy of methamphetamine from Defendant at Defendant's residence.  (Docs. 37 at 73–76; 13-1 at 8.)  On November 29, 2022, Officer Maloney of Tullahoma Police Department applied for and obtained a search warrant for Defendant's Facebook from Judge Lockhart.  (Docs. 14-1; 37 at 10–11.)  The Facebook search warrant affidavit stated that Officer Maloney conducted controlled buys both in "early November 2022" and "[a]round the second week in November."  (Doc. 14-1 at 3.)

On December 1, 2022, Officers Simmons and Maloney separately and contemporaneously applied to Judge Lockhart for a warrant to search Defendant's residence.  (Doc. 37 at 25–26, 39.)  Judge Lockhart first met with Coffee County Officers Simmons, Martin, and Jonathan Anthony.  (*Id*. at 25–26, 66–67.)  But when Judge Lockhart looked at Officer Simmons's search warrant, he realized Officer Maloney was waiting to apply for a search warrant for the same Defendant and location, and brought all the officers into the same room.  (*Id*.)  Judge Lockhart and the four officers sat around an approximately five-foot table.  (*Id*. at 72.)  Officer Maloney gave Judge Lockhart his warrant, and Judge Lockhart "flipped through the pages of both [warrants] and . . . said, '[t]hey're basically the same.'"  (*Id*. at 67.)  Judge Lockhart indicated the officers needed to decide whose warrant he should sign.  (*Id*.)  Officers Anthony and Maloney had a "very brief," approximately thirty-second to one minute "hash out" to determine which warrant Judge Lockhart should sign.  (*Id*. at 67–68.)  Judge Lockhart and the other officers remained around the small table during this

2

discussion, and Judge Lockhart overheard at least part, if not all, of the discussion. (*Id*. at 30, 37, 48, 84.)

Officer Simmons did not recall participating in the conversation and was "not paying a lot of attention while [it] was going on." (*Id*. at 68.) Testimony at the evidentiary hearing revealed that the officers briefly discussed having completed controlled buys, but none of the officers indicated they had discussed the dates of the controlled buys. (*Id*. at 31–35; 71–72, 83.) Ultimately the decision was made that Coffee County Sheriff's Department was positioned to execute the search warrant more quickly than the Tullahoma Police Department, so Judge Lockhart signed Officer Simmons's search warrant. (*Id*. at 27, 33.) Officer Simmons was aware that he was the only officer sworn to an affidavit during the December 1, 2022, meeting with Judge Lockhart. (*Id*. at 84.) Neither Officer Maloney nor Officer Simmons testified to viewing the other officer's affidavit. (*See generally* Doc. 37.)

In relevant part, the affidavit in the search warrant attested to by Officer Simmons states:

1. October 2022 Investigator Jonathan Anthony and I met with a confidential informant. This informant stated there was a black male subject named Johnny living on Helen St in Tullahoma, Tn 37388 selling large amounts of methamphetamine.
2. On or around 11/28/2022 Investigator Kevin Martin and I met with a reliable and confidential informant. Reliable informant advised of a meth transaction at 308 Helen St in Tullahoma, Tn. The reliable and confidential informant went to 308 Helen St, Tullahoma, Tn. While inside the residence the reliable and confidential informant observed a drug transaction of a felony amount of methamphetamine.
3. In the past 24-72 hours Investigator Kevin Martin and I met with a reliable and confidential informant. The reliable confidential informant advised methamphetamine could be purchased from the residence at 308 Helen St in Tullahoma, Tn. The reliable confidential informant went to the residence and entered the residence. While inside the residence the reliable and confidential informant observed an amount of methamphetamine for resale. This reliable

3

confidential informant knows this to be methamphetamine from their previous experience with the drug.
4. Through this investigation the subject selling methamphetamine at the residence of 308 Helen Street was positively identified as Johnny Lee Arthur Barbour.

(Doc. 13-1 at 8.) Officer Simmons testified that the dates stated at the beginning of paragraphs two and three referred to all the events in those paragraphs. (Doc. 37 at 76.)

Officers Simmons and Maloney both intentionally excluded information about controlled buys from their affidavits because that information is generally discoverable and the officers wanted to protect their sources. (*Id.* at 21–23, 38, 74–75.) Officer Simmons also indicated that he omitted information about the direct buy because he did not "intend to charge on the buy." (*Id.* at 82.) Officer Maloney stated that search warrants that omitted the identities of confidential informants had been upheld in both state and federal court. (*Id.* at 46.) Officer Simmons did not tell Judge Lockhart about the steps he took in conducting the controlled buys stated in paragraphs two and three of his affidavit. (*Id.* at 75.) Officer Simmons testified that after receiving the search warrant, he believed he had probable cause to search Defendant's residence. (*Id.* at 80.)

The search warrant was executed on December 1, 2022, and the Coffee County Sheriff's Department seized, among other things, methamphetamine, marijuana, cocaine, firearms, ammunition, cash, and scales. (Doc. 14 at 1.) Following this seizure, Defendant made incriminating statements when interrogated. (Doc. 13 at 3.)

**D.     Procedural History**

Based on evidence found during the execution of the search warrant, Defendant was indicted for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), possession with intent to distribute methamphetamine in violation of 21 US.C. §§ 841(a)(1), 841(b)(1)(C), and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.SC. § 924(c)(1)(A)(i). (Doc. 1.)

4

Defendant filed a motion and a supplement to "suppress all evidence gained as the result of searching his home, including the drugs and firearms recovered and all resulting statements made by [Defendant]." (Docs. 13 at 1; 16.) As grounds for the motion, Defendant argued the search warrant was defective because it was unsupported by probable cause. (Doc. 13 at 1.) Specifically, Defendant contended the affidavit was stale because it failed to include dates showing the alleged crimes were committed close in time to the affidavit, and that the informant was reliable. (*Id*. at 1, 4.) He also argued the good faith exception does not apply because the need to supply dates to establish a nexus for drug activity and to corroborate the reliability of an informant were so clearly established that no reasonable officer would rely on the warrant in this case. (*Id*. at 12.) Defendant contended the statements he made after execution of the search warrant should be suppressed along with the physical evidence obtained because the statement "was taken in exploitation of the prior illegality," and was therefore fruit of the poisonous tree. (*Id*. at 1, 11.)

The Government responded in opposition to Defendant's motion to suppress, arguing there was probable case based on the totality of the circumstances set out in the affidavit and reading the specified dates to apply to the entire paragraph in the affidavit, rather than a single sentence. (Doc. 14 at 4–6, 12.) The Government also argued that the good faith exception applied because both Officer Simmons and the issuing judge knew information beyond the four corners of the affidavit. (*Id*. at 9–10, 12.) The Government contended that even if probable cause did not exist, Officer Simmons relied on the warrant in good faith, and the exclusionary rule does not apply. (*Id*. at 6–7, 11–13.)

The Magistrate Judge held a hearing on Defendant's motion to suppress on December 21, 2023. (Doc. 24.) Following the hearing, the Court ordered further briefing on the issue of whether the Government should be allowed an evidentiary hearing regarding the good faith exception.

5

(Doc. 27.) The issue was fully briefed, and the Magistrate Judge held an evidentiary hearing on the good faith exception on April 10, 2024. (Docs. 28–30, 33, 37.)

In his R&R, issued pursuant to 28 U.S.C. § 636(b)(1)(B), Magistrate Judge Steger found the affidavit lacked a substantial basis for probable cause, and the good faith exception did not apply. (Doc. 35 at 5). The R&R accordingly recommended the motion to suppress be granted and the evidence found in the search of Defendant's house and Defendant's subsequent statements to police be suppressed. (Doc. 35.) The Government timely filed objections to the R&R (Doc. 40), Defendant responded (Doc. 43), and the Government replied (Doc. 44).

## II.     STANDARD OF REVIEW

This Court must conduct a *de novo* review of those portions of the R&R or the specified proposed findings or recommendations to which objection is made. 28 U.S.C. § 636(b)(1)(C). But *de novo* review does not require the district court to rehear witnesses whose testimony has been evaluated by the Magistrate Judge. *See United States v. Raddatz*, 447 U.S. 667, 675–76 (1980). The Magistrate Judge, as the factfinder, had the opportunity to observe and hear the witnesses and assess their demeanor, putting him or her in the best position to determine credibility. *See Moss v. Hofbauer*, 286 F.3d 851, 868 (6th Cir. 2002); *United States v. Hill*, 195 F.3d 258, 264–65 (6th Cir. 1999). The Magistrate Judge's assessment of witnesses' testimony is therefore entitled to deference. *United States v. Irorere*, 69 F. App'x 231, 236 (6th Cir. 2003).

In resolving objections, the district court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

6

### III. DISCUSSION

Neither party objected to the facts outlined in the R&R, but the Government did object to the findings and legal conclusions related to those facts. (*See* Doc. 40 at 1.) The Government specifically objects to the Magistrate Judge's findings that the search warrant did not support probable cause, and that the good faith exclusion does not apply. (*Id*. at 1, 6–7.)

#### A. Probable Cause

The Government first objects to the Magistrate Judge's conclusion that the search warrant did not support a probable cause finding. (*Id*. at 1.) The R&R stated "[i]n the absence of evidence of reliability of the confidential source(s), verified controlled buys, and time frames when methamphetamines or drug transactions were observed at the residence, an insufficient basis exists to demonstrate a reasonable likelihood that methamphetamine would be found at the residence as of December 1, 2022. (Doc. 35 at 4–5.) In support of its objection, the Government argues that if obvious inferences are made from the factual context, the affidavit is sufficient to find probable cause. (*Id*. at 1, 6–7.) Specifically, the Government asserts the Court should infer from the affidavit that the police used the same confidential informant for each event, and the dates stated at the beginning of each paragraph apply to every event in that paragraph. (Doc. 40 at 7.)

For the most part, this objection is a restatement of the arguments the Government presented to the Magistrate Judge. (*Compare id*. at 6–7 *with* Doc. 14 at 5–6.) To the extent the Government simply reiterates its previous arguments, the objection is waived. *D.S. v. Knox Cnty.*, No. 3:20-cv-240, 2022 U.S. Dist. LEXIS 54171, at *31–32 (E.D. Tenn. Mar. 25, 2022) ("Courts in the Sixth Circuit have routinely held that objections that merely restate the arguments previously presented are improper."); *see also United States v. Vanover*, No. 10-14-DLB-REW-1, 2017 U.S. Dist. LEXIS 54869, at *3 (E.D. Ky. Apr. 11, 2017). Moreover, the objection is without merit.

7

The Fourth Amendment requires probable cause in order for a search warrant to issue. U.S. Const. amend. IV; *United States v. Thomas*, 605 F.3d 300, 306 (6th Cir. 2010). Probable cause exists when "the facts and circumstances are such that a reasonably prudent person would be warranted in believing that an offense had been committed and that evidence thereof would be found on the premises to be searched." *Mays v. City of Dayton*, 134 F.3d 809, 814 (6th Cir. 1998) (quoting *Greene v. Reeves,* 80 F.3d 1101, 1106 (6th Cir. 1996)). In determining whether probable cause exists, a court must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Terry*, 522 F.3d 645, 648 (6th Cir. 2008) (quoting *United States v. Gates*, 462 U.S. 213, 238 (1983)). In reviewing the issuing judge's decision, "our job is not to reweigh the assertions in an affidavit but to ask whether the [judge] had a substantial basis for his conclusion. *United States v. Christian*, 925 F.3d 305, 310 (6th Cir. 2019) (en banc) (citations omitted). When reviewing a Defendant's challenge to probable cause in a warrant, "[w]ith great deference toward the issuing judge's determination, federal courts examine the affidavit's four corners to determine whether, under the totality of the circumstances, the low bar of probable cause has been overcome." *United States v. Moore*, 999 F.3d 993, 996 (6th Cir. 2021).

The Government's reliance on *United States v. Sanders*, 106 F.4th 455 (6th Cir. 2024) to argue the affidavit was not "bare bones" and therefore supported probable cause is misplaced. First, *Sanders* distinguishes the probable cause inquiry—"the probability that evidence of a crime will be found in a particular place"—from the "bare bones exception," which concerns an "officer's objective blameworthiness," with regard to the good faith exception. *Id*. at 470. Second, in *Sanders*, unlike the present case, an informant notified officers that the defendant was dealing

drugs, then "promptly engaged in two controlled buys," all of which were detailed in the search warrant affidavit. *Id*. at 464. While the affidavit did not expressly discuss the credibility, reliability, or veracity of the confidential informant, the proximity in time of the informant's tip and controlled buys "suggest[ed] the informant's initial tip was quite credible," and the court found the affidavit supported probable cause. *Id*. at 464, 467.

When an affidavit relies on hearsay from a confidential source "a court must consider the veracity, reliability, and the basis of knowledge of that information as part of the totality of the circumstances for evaluating the impact of the information." *United States v. Frazier*, 423 F. 3d 526, 532 (6th Cir. 2005). The affidavit in the present case states only the timing of meetings between investigators and confidential informants, and does not indicate the timing of the events the informants reported. *See* Doc. 13-1 at 8. The Court does not find it an "obvious" inference that the dates stated at the beginning of paragraphs two and three of the affidavit apply to all events in those paragraphs. (*See id*.); *United States v. White*, 874 F.3d 490, 502 (6th Cir. 2017). The affidavit provides no evidence of the confidential informant's reliability. *See* Doc. 13-1 at 8. The information provided is insufficient to warrant a reasonably prudent person to believe that evidence of a drug crime would be found in Defendant's house. The Court finds the affidavit lacks a substantial basis for probable cause. Accordingly, the Government's objection to the conclusion that the search warrant lacked probable cause will be **OVERRULED**.

A.   **Good Faith Exception**

The Government second objects to the Magistrate Judge's finding that the good faith exception does not apply. (Doc. 40 at 6–11.) Relying on *United States v. Herring*, 555 U.S. 135 (2009), the Government contends that "there is no evidence of police misconduct or culpability," or showing of "recurring or systemic negligence" to warrant exclusion of evidence. (*Id*. at 10–

9

11.) Again, much of the Government's objection restates arguments presented to the Magistrate Judge. (*Compare* Doc. 40. at 7–11 *with* Doc. 14 at 6–12); *See Knox Cnty.*, No. 3:20-cv-240, 2022 U.S. Dist. LEXIS 54171, at *31–32; *Vanover*, No. 10-14-DLB-REW-1, 2017 U.S. Dist. LEXIS 54869, at *3. But the Government also specifically objects to the Magistrate Judge's application of *Herring* to find systemic negligence and deliberate misconduct in this case. (Doc. 40 at 10–11.)

Under *United States v. Leon*, 468 U.S. 897 (1984), evidence obtained based on a search warrant that lacks probable cause should not be excluded if there was "objectively reasonable law enforcement activity," including good faith reliance on a warrant. *Id*. at 919–20. However,

> some circumstances exist in which the good-faith exception does not apply: 1) the supporting affidavit contained knowing or reckless falsity; 2) the issuing magistrate failed to act in a neutral and detached fashion and served merely as a rubber stamp for the police; 3) the supporting affidavit did not provide the magistrate with a substantial basis for determining the existence of probable cause; or 4) the officer's reliance on the warrant was neither in good faith nor objectively reasonable.

*United States v. Robinson*, 744 F. App'x 277, 279-80 (6th Cir. 2018) (citing *United States v. Hammond*, 351 F.3d 765, 773-74 (6th Cir. 2003)). "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring*, 555 U.S. at 144. "[T]he exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Id*. "A court reviewing an officer's good faith under *Leon* may look beyond the four corners of the warrant affidavit to information that was known to the officer and revealed to the issuing magistrate." *United States v. Frazier*, 423 F.3d 526, 535-36 (6th Cir. 2005). This does not extend to information known to the officers but not communicated to the issuing judge. *United States v. Davis*, 84 F.4th 672, 680 (6th Cir. 2023).

"[T]he exclusionary rule exists to deter the misconduct of police officers—not judges." *Davis*, 84 F.4th at 678–79 (citing *Leon*, 468 U.S. at 916). For that reason, "the exclusionary rule generally should not apply if a judge issues a search warrant that violates the Fourth Amendment because it rests on an affidavit that does not establish probable cause." *Id*. (citing *Leon*, 468 U.S. at 916–21). But "*Leon* recognized that officers might sometimes bear the blame for unlawful warrants in 'unusual' situations," including when a warrant is facially deficient. *Id*. (citing *Leon*, 468 U.S. at 918); *United States v. Lazar*, 604 F.3d 230, 237–38 (6th Cir. 2010).

The Government asserts the Magistrate Judge did not find systemic negligence, but rather found that application of the good faith exception would encourage systemic negligence. (Doc. 40 at 10 (citing Doc. 35 at 7–8).) This is not entirely accurate. In addition to the finding the Government cites, the Magistrate Judge also stated that allowing the "'standard practice' of omitting controlled buys from the affidavit" to protect informants "amounts to 'systemic negligence'" or deliberate misconduct. (Doc. 35 at 9.) The Government concedes that a finding of systemic negligence may be warranted if "officers continue to write insufficient affidavits in reliance on judges applying good faith" after a federal court finds such an affidavit lacks probable cause. (*Id*. at 10.) But the Government maintains that such a pattern has not occurred here, and Officer Simmons was not on clear notice that the affidavit was so deficient that it was deliberate, reckless, or grossly negligent of him not to second-guess the issuing judge's decision. (*Id*. at 11.) This Court agrees.

Officer Simmons testified that he intentionally omitted information about controlled buys from his affidavit in order to protect the identity of informants. (Doc. 37 at 74–75.) Officer Maloney also indicated that such omission was common practice and asserted his understanding

11

that search warrants with the information omitted had been upheld in both state and federal courts. (*Id*. at 46.)

But while the affidavit lacked a basis for probable cause, there is no evidence that Officer Simmons drafted his affidavit knowing it lacked probable cause, or expecting to remedy that by verbally communicating missing information to the issuing judge. To the contrary, when asked about omission of the controlled buys from the affidavit, he indicated that in cases like Defendant's, officers are "just looking for probable cause to get into the residence and then charge on what's located inside the residence." (Doc. 37 at 74.) At the December 1, 2022, meeting, the officers generally discussed having completed controlled buys, in order to determine who was more invested in the case and better positioned to execute the search warrant, not to convince Judge Lockhart there was probable cause to issue the warrant. (*See id*. at 27, 33, 67.) Officer Simmons did not recall participating in the conversation between the officers in Judge Lockhart's presence, and was "not paying a lot of attention while [it] was going on." (*Id*. at 68.) If Officer Simmons understood that his affidavit failed to support probable cause without discussing controlled buys, he presumably would have ensured the information was communicated to Judge Lockhart—particularly because he was the only sworn officer present at the warrant application meeting. (*See id*. at 84.) But there is no evidence that he even attempted to do so. Instead, Officer Simmons testified that he believed he had probable cause to search Defendant's residence after obtaining the search warrant. (*Id*. at 80.)

The Court finds that Officer Simmons's affidavit provided the issuing judge with a substantial basis for determining the existence of probable cause. "*Leon's* good-faith exception to the exclusionary rule does not apply if an officer's affidavit in support of the warrant is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'"

12

Case 4:23-cr-00013-CLC-CHS   Document 45   Filed 09/25/24   Page 12 of 14   PageID #: 642

*United States v. Reed*, 993 F.3d 441, 450 (6th Cir. 2021) (quoting *Leon*, 468 U.S. at 923). This is often referred to as a "bare-bones affidavit." *Id*. A bare-bones affidavit indicates that an "officer recklessly relied on the judge's decision that probable cause existed for the warrant." *Id*. (citing *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017). But "[r]easonable inferences that are not sufficient to sustain probable cause . . . may suffice to save the ensuing search as objectively reasonable." *White*, 874 F.3d at 500; *see e.g., United States v. Van Shutters,* 163 F.3d 331, 336-38 (6th Cir. 1998) (applying the good-faith exception where affidavit described the residence, the items sought, and the defendant's counterfeiting scheme, but connected the place to the illegal activity only by stating that the residence was "available" to the defendant); *United States v. Carpenter,* 360 F.3d 591, 596 (6th Cir. 2004) (applying the good-faith exception where affidavit stated that a road connected the residence to a nearby marijuana field). All that is required to avoid a "bare bones" label is identification of "a 'minimally sufficient' nexus between" the place to be searched and the evidence of the unlawful activity. *Reed*, 993 F.3d at 450-51 (citations omitted). The confidential tips outlined in Officer Simmons's affidavit provide some evidence connecting Defendant to the sale of drugs from his residence. The affidavit is more than bare bones, and does not fail under this exception to good faith.

The Court does not credit the information known to Officer Simmons but not to Judge Lockhart to bolster a finding that Officer Simmons acted in good faith. *See Davis*, 84 F.4th at 680. But intentional omission of certain evidence from the affidavit does not itself indicate reckless conduct or systemic negligence sufficient to trigger application of the exclusionary rule. *See Herring*, 555 U.S. at 144. The Court recognizes that the *Frazier* safeguard of limiting a judge to the four corners of an affidavit does not sufficiently disincentivize the intentional omission of information from affidavits if it is standard practice to verbally communicate the omitted

13

information to the judge. *See Frazier*, 423 F.3d at 535–36. Instead it may incentivize intentional omission—even to the extent of failing to support probable cause—and subsequent reliance on the good faith exception. But this case does not demonstrate such a pattern of systemic negligence. Officer Simmons did not rely on the Court's application of the good faith exception, but rather on the issuing judge's finding that his affidavit supported probable cause. *See Davis*, 84 F.4th at 678–79; *Leon*, 468 U.S. at 916. This is evidenced by the fact that he did not attempt to verbally tell Judge Lockhart about his controlled buys.

Finally, Courts apply the exclusionary rule barring the use of evidence uncovered in violation of the Fourth Amendment "only if its benefits in stopping constitutional violations exceed its costs in hindering the trial's 'truth-finding function' and permitting 'wrongdoers' to escape punishment." *Davis v. United States*, 564 U.S. 229, 236-38 (2011) (quoting *United States v. Robinson*, 63 F.4th 530, 534 (6th Cir. 2023)). Excluding evidence in this case would not deter negligent conduct by law enforcement officers in the future, and the benefits of deterring any incentive to commit systemic constitutional violations present in this case do not exceed the costs of the hinderance of trial. Accordingly, the Government's objection to the conclusion that the good faith exception does not apply will be **SUSTAINED.**

## IV. CONCLUSION

For the reasons stated above, the Government's objections to the R&R (Doc. 40) will be **OVERRULED in part** and **SUSTAINED in part**, the R&R (Doc. 35) will be **ADOPTED in part and REJECTED in part**, and Defendant's motion to suppress (Doc. 13) will be **DENIED**.

**AN APPROPRIATE ORDER WILL ENTER.**

/s/
**CURTIS L. COLLIER
UNITED STATES DISTRICT**